## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ELANTE JAVONNE McCUIEN, | ) | |
| AIS # 00295094, | ) | |
|     Petitioner, | ) | |
| | ) | |
|     v. | ) | CIVIL ACTION NO. 1:24-00172-TFM-N |
| | ) | |
| HEAD WARDEN, | ) | |
| *St. Clair Correctional Facility*,[1] | ) | |
| *Alabama Department of* | ) | |
| *Corrections*, | ) | |
|     Respondent. | ) | |

## ORDER SETTING HABEAS REPLY DEADLINE

As ordered (*see* Doc# 5), the Respondent, through the Office of the Attorney

General of the State of Alabama, served an Answer (Doc# 8), with attached exhibits

(Docs# 8-1 through -25), to the petition for a writ of habeas corpus under 28 U.S.C. §

2254 dated May 9, 2024 (Doc# 1), filed by Petitioner Elante Javonne McCuien, an

Alabama prisoner proceeding without counsel (*pro se*). McCuien has filed a reply to

the Answer dated June 18, 2025 (Doc# 11). The assigned District Judge has referred

the petition, answer, and reply to the undersigned Magistrate Judge for appropriate

---

[1] "The federal habeas statute straightforwardly provides that the proper respondent
to a habeas petition is 'the person who has custody over [the petitioner].' 28 U.S.C. §
2242; see also § 2243 ('The writ, or order to show cause shall be directed to the
person having custody of the person detained') … [L]ongstanding practice confirms
that in habeas challenges to present physical confinement[,] the default rule is that
the proper respondent is the warden of the facility where the prisoner is being held,
not the Attorney General or some other remote supervisory official." *Rumsfeld v.
Padilla*, 542 U.S. 426, 434-35, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004). As the
petitioner has been transferred to a different facility since the respondent was last
updated, the Head Warden of St. Clair Correctional Facility, where the petitioner is
currently being held, *see* (Docs# 12, 13)  https://doc.alabama.gov/inmatesearch.aspx
(last visited March 13, 2026), is substituted for John Crow as the respondent in this
action. The Clerk of Court is **DIRECTED** to update the docket accordingly.

action. *See* S.D. Ala. GenLR 72(b); (Doc# 4; 5/29/2024, 5/26/2025 & 6/23/2025 electronic reference notations). Under S.D. Ala. GenLR 72(a)(2)(R), the undersigned is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of the petition, in accordance with 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

## I.    Procedural Background

McCuien was convicted by a jury in the Circuit Court of Mobile County, Alabama, on a charge of first-degree assault in violation of Code of Alabama § 13A-6-20 (Case No. CC-2020-002676.00), and was sentenced to 50 years' imprisonment.[2] On direct appeal of that judgment, McCuien's appellate counsel filed a brief with the Alabama Court of Criminal Appeals (ACCA) pursuant to the procedure set out in *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), advising that they had found no reversible errors to raise and requesting leave to withdraw from further representation. (*See* Doc# 8-5 [Answer Exhibit 2]). On August 2, 2022, the ACCA issued an order on the *Anders* brief giving McCuien "until August 30, 2022, to serve th[e ACCA] with a list of every point or issue [he] want[ed] considered in th[e] appeal." (Doc# 8-6 [Answer Exhibit 3]). On August 30,

---

[2] Because McCuien challenges a criminal judgment handed down by a state court within this judicial district, *see* 28 U.S.C. § 81(c), this Court has jurisdiction to entertain his habeas petition. *See* 28 U.S.C. § 2241(d).

2022, the ACCA granted McCuien's *pro se* motion for more time, extending the deadline to September 20, 2022. (Doc# 8-7 [Answer Exhibit 4]).

On October 4, 2022, after receiving no list of points and issues from McCuien, the ACCA ordered his direct appeal dismissed "based on [his] failure to raise any issues for review[,]" and issued its Certificate of Judgment under Alabama Rule of Appellate Procedure 41. (Docs# 8-8 & 8-9 [Answer Exhibits 5 & 6]; Doc# 8-10, PageID.886 [Answer Exhibit 7, p.2]). On June 13, 2023, the ACCA docketed a *pro se* motion from McCuien requesting another extension of time to submit *pro se* issues, which it ordered stricken on June 20, 2023, noting that the "certificate of judgment was issued on October 4, 2022." (*See* Doc# 8-10, PageID.885 [Answer Exhibit 7, p.1]); Doc# 8-11 [Answer Exhibit 8]).

On October 6, 2023, the Mobile County Circuit Court received a petition for post-conviction relief under Alabama Rule of Criminal Procedure 32 from McCuien challenging his first-degree assault conviction and sentence, along with a check for the $260 filing fee for such a petition. (Doc# 8-13 [Answer Exhibit 10]). The State of Alabama filed its response in opposition to McCuien's Rule 32 petition on November 29, 2023 (Doc# 8-14 [Answer Exhibit 11]); on December 11, 2023, the circuit court dismissed the petition as both time-barred under Alabama Rule of Criminal Procedure 32.2(c) and without merit (Doc# 8-15 [Answer Exhibit 12]). McCuien attempted to appeal that decision (*see* Doc# 8-16 [Answer Exhibit 13]), but the ACCA dismissed the appeal as untimely on March 7, 2024 (*see* Docs# 8-17, 8-18 [Answer Exhibits 14 & 15]), and overruled McCuien's application for rehearing of

that decision on March 28, 2024. (See Doc# 8-22, PageID.1001 [Answer Exhibit 19, Cert Petition Ex. B]). On April 22, 2024, McCuien filed separate petitions for a writ of certiorari (Doc# 8-22 [Answer Exhibit 19]) and for a writ of mandamus (Doc# 8-20 [Answer Exhibit 17]) with the Alabama Supreme Court, which denied the mandamus petition and struck as untimely the certiorari petition by orders entered June 10, 2024 (Docs# 8-21, 8-23 [Answer Exhibits 18 & 20]).

McCuien filed the present § 2254 habeas petition challenging his first-degree assault criminal judgment on May 9, 2024, the date he certifies that he delivered it to prison officials for mailing. *See* (Doc#1, PageID.14); *Taylor v. Williams*, 528 F.3d 847, 849 n.3 (11th Cir. 2008) ("Under the federal 'mailbox rule,' a *pro se* federal habeas petition is deemed to be filed on the date it is delivered to prison authorities for mailing.").

## II.   Analysis

In his Answer, the Respondent argues that McCuien's petition is both untimely and procedurally defaulted. Upon consideration of the current record, the undersigned agrees as to both issues—though on the timeliness issue, not for the reasons stated in the Respondent's answer, as will be explained.[3]

---

[3] If a state answers a habeas petition either without contesting its timeliness or by erroneously conceding that it is timely, the United States Supreme Court has held "that a district court may act on its own initiative to dismiss a petition [as untimely] in such a circumstance, provided the court 'accord[s] the parties fair notice and an opportunity to present their positions.' " *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 654 (11th Cir. 2020) (per curiam) (quoting *Day v. McDonough*, 547 U.S. 198, 210, 126 S. Ct. 1675, 1679-80, 164 L. Ed. 2d 376 (2006)). Considering that authority, the undersigned concludes that a district court can also dismiss a petition as

### a.  1-Year Statute of Limitations

Because McCuien's habeas petition was filed after April 24, 1996, it is subject

to application of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub.

L. No. 104-132, 110 Stat. 1214 ("AEDPA"). *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d

1271, 1281 (11th Cir. 2012). Among other things, AEDPA imposes the following

time limit for bringing § 2254 habeas petitions:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). *See also* Rule 3(c) of the Rules Governing Section 2254 Cases

in the United States District Courts ("The time for filing a petition is governed by

28 U.S.C. § 2244(d)."). Nothing in the record supports running McCuien's one-year

---

untimely when, as here, the state does assert a petition is time-barred but bases its
argument on erroneous factual and/or legal conclusions.

limitations period from any of the dates in § 2244(d)(1)(B) − (D).[4] Thus, McCuien had "one year from the date his judgment of conviction and sentence bec[a]me[] final to file a petition for a writ of habeas corpus in federal court." *Walton v. Sec'y, Fla. Dep't of Corr.*, 661 F.3d 1308, 1310 (11th Cir. 2011) (citing 28 U.S.C. § 2244(d)(1)(A)).

The ACCA dismissed McCuien's direct appeal on October 4, 2022. Assuming for present purposes that McCuien was entitled to file an application for rehearing of that decision, *see* Ala. R. App. P. 40(a), McCuien's judgment became final when the time to file such an application expired after October 18, 2022. *See id.* Rule 40(c) (subject to an inapplicable exception, "[a]n application for rehearing and the brief in support of the application must be filed with the clerk of the appropriate appellate court within 14 days (2 weeks) of the date the decision being questioned is issued…").[5] Thus, his 1-year AEDPA limitation period began running the following

---

[4] McCuien appears to invoke § 2244(d)(1)(B) by claiming a "state impediment" in that he did not receive the ACCA's extension and dismissal orders in his direct appeal until October 14, 2022. (Doc# 11, PageID.1021-1022). However, "[t]o delay the running of the statute of limitations, § 2244(d)(1)(B) requires state action that both 'violat[ed] … the Constitution or laws of the United States' and 'prevented [the prisoner] from filing' his federal petition." *Johnson v. Fla. Dep't Of Corr.*, 513 F.3d 1328, 1331–32 (11th Cir. 2008). McCuien "has pointed to no federal statute or constitutional provision that the [late receipt of the ACCA's orders] violated. [McCuien] also has not demonstrated how the State's action actually prevented him from timely filing his § 2254 petition[]." *Id.* at 1332. Despite admitting he had knowledge of the ACCA's dismissal of his direct appeal by October 14, 2022, McCuien nevertheless waited approximately 7 months to move for another extension of time with the ACCA, and almost a year to file his Rule 32 petition.

[5] The Respondent's answer claims that McCuien's judgment "became final for purposes of the AEDPA on January 2, 2023[,]" under the apparent belief that McCuien's direct appeal remained pending, and his judgment non-final, for 90 days

day, October 19, 2022. *See* Fed. R. Civ. P. 6(a)(1) ("[I]n computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time[, w]hen the period is stated in days or a longer unit of time: (A) exclude the day of the event that triggers the period; (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."); *San Martin v. McNeil*, 633 F.3d 1257, 1266

---

from the date the ACCA dismissed his appeal to allow him to seek review with the United States Supreme Court. (Doc# 8, PageID.55-58). However, because McCuien never sought review on direct appeal with the Alabama Supreme Court, he could not have sought certiorari review with the United States Supreme Court, and thus his judgment became final for purposes of AEDPA's statute of limitations when the deadline for him to seek further review in Alabama state courts on direct appeal expired. *See* Sup. Ct. R. 13(1) ("Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment. A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."); *Gonzalez v. Thaler*, 565 U.S. 134, 150, 132 S. Ct. 641, 181 L. Ed. 2d 619 (2012) ("The text of § 2244(d)(1)(A), which marks finality as of 'the conclusion of direct review or the expiration of the time for seeking such review,' consists of two prongs. Each prong—the 'conclusion of direct review' and the 'expiration of the time for seeking such review'—relates to a distinct category of petitioners. For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the 'conclusion of direct review'—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires. We thus agree with the Court of Appeals that because Gonzalez did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired.").

(11th Cir. 2011) (applying Federal Rule 6(a)(1) in evaluating AEDPA's one-year limitation period).

AEDPA's "limitation period is tolled for '[t]he time during which a properly filed application for State post-conviction or other collateral review' is pending." *Walton*, 661 F.3d at 1310 (quoting 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.")).[6] "[An Alabama] Rule 32 petition is

---

[6]

     The Supreme Court has interpreted the word "pending" to "cover the time between a lower state court's decision and the filing of a notice of appeal to a higher state court." *Carey*[ *v. Saffold*], 536 U.S. [214,] 217, 122 S. Ct. 2134[, 153 L. Ed. 2d 260 (2002)]; *Jones*[ *v. Nagle*], 349 F.3d [1305,] 1307–08 [(11th Cir. 2003)]. "[U]ntil the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.' " *Carey,* 536 U.S. at 220, 122 S. Ct. 2134. As the Supreme Court has explained, a claim is "pending" during "the period between (1) the lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Evans v. Chavis,* 546 U.S. 189, 126 S. Ct. 846, 849, 163 L. Ed. 2d 684 (2006) (emphasis and citation omitted). Nothing in the caselaw dictates that the appeal must be taken for the claim to remain pending. Moreover, logic dictates that the claim is pending regardless of whether the inmate actually files the notice of appeal. "Pending" refers to the continuation of the process, or the time until the process is completed. *Carey,* 536 U.S. at 219–20, 122 S. Ct. 2134; *Wade v. Battle,* 379 F.3d 1254, 1262 (11th Cir. 2004). The process is not complete until there is no other avenue the prisoner could pursue. Thus, the claim remains pending until the time to seek review expires.

*Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383 (11th Cir. 2006) (per curiam).

a tolling motion under § 2244(d)(2)…" *McCloud v. Hooks*, 560 F.3d 1223, 1227 (11th Cir. 2009).[7] For purposes of timeliness under AEDPA, the undersigned will assume McCuien's Rule 32 petition was filed on Friday, September 8, 2023,[8] 325 days from when his criminal judgment became final.

---

[7] A Rule 32 petition is currently the only post-conviction remedy available to Alabama defendants once direct appeal has concluded. *See* Ala. R. Crim. P. 32.4.

[8]     Alabama applies the "mailbox rule" to Rule 32 petitions submitted by *pro se* by prisoners, deeming them filed when they "are given to prison officials for mailing." *Ex parte Allen*, 825 So. 2d 271, 272 (Ala. 2002). McCuien's Rule 32 petition, however, is not a model of clarity on this point. McCuien's signature on the petition is dated "9/3/23," but he certified immediately prior his signature that he was mailing the petition on "9/3/22"—one year <u>before</u> signing it—and the notary's signature is dated September 8, 2023. (*See* Doc# 8-13, PageID.915-916). Since a Rule 32 petition must be petition be "verified by the petitioner or the petitioner's attorney…"—that is, "sworn to under oath or penalty of perjury by the petitioner or counsel of record[,]" *Melson v. Allen*, 548 F.3d 993, 997 (11th Cir 2008) (citing Ala. R. Crim. P. 32.6(a) app. (2002)), *cert. granted and judgment vacated on other grounds*, 561 U.S. 1001, 130 S. Ct. 3491 (Mem), 177 L. Ed. 2d 1081 (2010), the undersigned will assume for present purposes that McCuien delivered the petition to prison officials for mailing the same day it was notarized. And because the petition and filing fee were both received by the Mobile County Circuit Court at the same time, the undersigned will also assume the filing fee was included with the petition. *See Allen v. Siebert*, 552 U.S. 3, 6, 128 S. Ct. 2, 169 L. Ed. 2d 329 (2007) (per curiam) (a state application must comply with in compliance with applicable state laws and rules governing filings in order to be considered "properly filed" to toll the AEPDA limitations period); *Smith v. Comm'r, Ala. Dep't of Corr.*, 703 F.3d 1266, 1270–71 (11th Cir. 2012) (per curiam) (explaining that an Alabama Rule 32 petition must be accompanied by either the filing fee or an *in forma pauperis* motion in order to be considered "properly filed").

    In dismissing McCuien's Rule 32 petition as untimely, the circuit court found that McCuien's deadline to file a Rule 32 petition challenging the subject judgment was October 5, 2023, and that, while the petition itself was "postmarked" the day before that deadline, it was still untimely because the circuit court clerk's records showed "that the filing fee was paid on October 6, 2023; one day too late." (*See* Doc# 8-15, PageID.964). The circuit court's order, however, failed to discuss Alabama's "mailbox rule" in making this determination, and made no findings as to when the petition and filing fee were delivered to prison officials for mailing.

McCuien's post-conviction proceedings were no longer "pending," and his AEDPA clock, with 40 days left, began running again, on Tuesday, January 23, 2024, the day after McCuien's 42-day window to appeal the circuit court's December 11, 2023 order dismissing his Rule 32 petition expired.[9] *See* Ala. R. App. P. 4(a)(1); 26(a); *Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383 (11th Cir. 2006) (per curiam) ("As the Supreme Court has explained, a claim is 'pending' during 'the period between (1) the lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law.' *Evans v. Chavis*, 546 U.S. 189, 126 S. Ct. 846, 849, 163 L. Ed. 2d 684 (2006) (emphasis and citation omitted)…'Pending' refers to the continuation of the process, or the time until the process is completed…The process is not complete until there is no other avenue the prisoner could pursue. Thus, the claim remains pending until the time to seek review expires."). Thus, McCuien had until Monday, March 4, 2024, to file a federal habeas petition.[10] McCuien, however, did not deliver

---

[9] Once again off by a year, McCuien certified that he had mailed his notice of appeal in his Rule 32 proceedings on "January 29, 2023" (*see* Doc# 8-16, PageID.973), even though McCuien's Rule 32 petition had yet to even be filed on January 29, 2023, and the notice was postmarked February 13, 2024 (*see id.*, PageID.980). Thus, it is reasonably apparent that the notice of appeal was in fact delivered to prison officials for mailing in 2024, not 2023.

[10] Because the last day of McCuien's AEDPA limitations period fell on March 2, 2024, a Saturday, the deadline was extended to the following Monday by operation of Federal Rule 6(a)(1)(C).

the present petition to prison officials for mailing until May 9, 2024,[11] making it over 2 months late.[12]

Certain equitable exceptions may excuse an untimely habeas claim. First,

---

[11] The Respondent's answer inexplicably, and repeatedly, claims that McCuien's habeas petition was filed on March 9, 2025 (*see* Doc# 8 ¶¶ 6, 24, 27, 29, PageID.45, 57-59), despite the fact that this case was opened on May 28, 2024, the petition clearly certifies it was delivered to prison officials for mailing on "5-9-2024," and the federal "mailbox rule" is long-established and should be well-known to the Alabama Attorney General's Office by now. Indeed, the undersigned's service order stated that this action was deemed initiated on May 9, 2024. (See Doc# 5, PageID.27).

[12] The Respondent erroneously asserts that McCuien's Rule 32 proceedings concluded for purposes of AEDPA tolling on April 18, 2024, a date whose significance is not explained. (*See* Doc# 8 ¶ 24, PageID.57). However, because McCuien did not timely appeal the circuit court's dismissal of his Rule 32 petition, his Rule 32 proceedings were no longer "pending" after the time for such appeal expired. *See Cramer*, 461 F.3d at 1383. Indeed, accepting the Respondent's proposed AEDPA timeline—that McCuien's judgment became final on January 2, 2023, that his AEDPA limitations period was tolled on October 6, 2023, and that tolling ceased after April 18, 2024—the present petition would have been timely filed with approximately two months to spare, instead of two months late.

The Respondent is correct, however, that neither of McCuien's petitions filed with the Alabama Supreme Court, both dated April 22, 2024, could serve to further toll his AEDPA clock, because they were both filed after his limitations period had already expired. *See Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) ("[N]one of the documents Sibley attempted to file with the state courts after August 10, 2001-the deadline for filing a federal habeas petition-could in any way toll that deadline because, once a deadline has expired, there is nothing left to toll. A state court filing after the federal habeas filing deadline does not revive it. *See Moore v. Crosby,* 321 F.3d 1377, 1381 (11th Cir. 2003) ('While a "properly filed" application for post-conviction relief tolls the statute of limitations, it does not reset or restart the statute of limitations once the limitations period has expired. In other words, the tolling provision does not operate to revive the one-year limitations period if such period has expired.'). Petitioner may not attempt to resurrect a terminated statute of limitations by subsequently filing documents that purport to 'relate back' to previously submitted documents that were, in themselves, insufficient to toll the statute. *Id.* at 1381 ('The statutory tolling provision does not encompass a period of time in which a state prisoner does not have a "properly filed" post-conviction application actually pending in state court.').").

the district court may still review an untimely petition filed by a petitioner entitled to equitable tolling. As the Supreme Court has explained, the time period specified in 28 U.S.C. § 2244 is a statute of limitations, not a jurisdictional bar, and Section 2244 does not bar the application of equitable tolling in an appropriate case. *Holland v. Florida,* 560 U.S. 631, 130 S. Ct. 2549, 2560, 177 L. Ed. 2d 130 (2010).

The Supreme Court [has ]affirmed, however, that "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 2562 (internal quotation marks omitted); *Sandvik v. United States,* 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam) (holding that equitable tolling is available "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence"). "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.' " *Holland,* 130 S. Ct. at 2565 (internal quotation marks and citation omitted). As for the "extraordinary circumstance" prong, [it] require[s] a defendant to show a causal connection between the alleged extraordinary circumstances and the late filing of the petition. *See Lawrence v. Florida,* 421 F.3d 1221, 1226–27 (11th Cir. 2005).

*San Martin*, 633 F.3d at 1267 (footnote omitted).

Second,

[i]n *McQuiggin*[ *v. Perkins*], the Supreme Court held that a federal habeas petitioner can qualify for an equitable exception to the one-year statute of limitation and obtain federal review of his claims about constitutional errors in his state court proceedings if he satisfies the threshold test established in *Schlup*[ *v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)]. *McQuiggin,* 133 S. Ct. [1924,] 1928[ (2013)]. Under that test, the petitioner must "persuade[ ] the [habeas] court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup,* 513 U.S. at 329, 115 S. Ct. at 868). The test devised in *Schlup* is intended to "ensure[ ] that [the] petitioner's case is truly extraordinary, while still provide petitioner a meaningful avenue by which to avoid a manifest injustice." 513 U.S. at 327, 115 S. Ct. at 867

> (internal quotation marks and citation omitted). The petitioner must prove that "he is 'actually innocent,' " *id.* at 327, 115 S. Ct. at 867, by producing "new reliable evidence ... not presented at trial," *id.* at 324, 115 S. Ct. at 865, that "raise[s] sufficient doubt about [his] guilt to undermine confidence in the result of the trial," *id.* at 317, 115 S. Ct. at 862.

*Brown v. Sec'y, Fla. Dep't of Corr.*, 580 F. App'x 721, 726–27 (11th Cir. 2014) (per curiam) (unpublished). As the Supreme Court has recognized, "the *Schlup* standard is 'demanding' and seldom met…" *McQuiggin*, 569 U.S. at 386 (citing *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006)).

> In establishing an actual innocence exception…, the Supreme Court explained that "new evidence" of actual innocence includes "evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup*, 513 U.S. at 328 (quoting Henry J. Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 160 (1970)). The Court also observed that "[t]o be credible" an innocence claim must be based on "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. When the Court extended this "actual innocence" exception to the statute of limitations, it likewise referenced "new evidence." *McQuiggin*, 569 U.S. at 386.

*Stimpson v. Warden*, No. 22-10190, 2025 WL 484049, at *3 (11th Cir. Feb. 13, 2025) (unpublished). Importantly, in evaluating an "actual innocence" claim, "[w]e ask whether the evidence demonstrates 'factual innocence, not mere legal insufficiency.' " *Id.* at *4 (quoting *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)).

### b.  Procedural Default

> "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999);

accord *Ogle v. Johnson*, 488 F.3d 1364, 1368 (11th Cir. 2007) ("The habeas statute requires applicants to exhaust all available state law remedies before filing a federal habeas petition."); 28 U.S.C § 2254(b)(1)(A). "Under the exhaustion requirement, a habeas petitioner challenging a state conviction must first attempt to present his claim in state court." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011); *see also Picard v. Connor*, 404 U.S. 270, 276, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971) ("Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies."). "The exhaustion requirement springs from principles of comity, which protect the state court's role in the enforcement of federal law and prevent disruption of state court proceedings." *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010). "Consistent with the purpose of the exhaustion rule, 'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.' " *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. 1728); *accord Ward*, 592 F.3d at 1156 ("[T]o exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review."). In the context of a habeas proceeding in the Alabama state courts, one complete round of Alabama's established appellate review process means that the claim must be presented on appeal to the Alabama Court of Criminal Appeals and on petition for discretionary review to the Alabama Supreme Court. *See Pruitt*, 348 F.3d at 1359.

*Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F.4th 1193, 1216–17 (11th Cir. 2022).

Here, McCuien did not exhaust any of his claims because he did not pursue them

through one complete round of review in Alabama's appellate courts, either on

direct appeal (where he failed to timely submit issues for consideration by the

ACCA after his appellate counsel filed an *Anders* brief and moved to withdraw), or

in his Rule 32 proceedings (where he failed to timely appeal the circuit court's

dismissal of his petition).

14

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). " 'The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures.' " *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1329 (11th Cir. 2021) (quoting *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) (internal quotation mark omitted)). "When the petitioner fails to exhaust state-court remedies 'and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default ... the exhaustion requirement and procedural default principles combine to mandate dismissal,' and federal habeas relief is barred absent an applicable exception." *Id.* (quoting *Bailey v. Nagle*, 172 F.3d 1299, 1303, 1306 (11th Cir. 1999) (per curiam)). *Accord Henderson*, 353 F.3d at 898–99 ("A claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.' " (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991))).

Here, the only avenue McCuien had to exhaust his habeas claims in state court after his direct appeal concluded was through a Rule 32 petition. *See* Ala. R. Crim. P. 32.4 ("A proceeding under this rule displaces all post-trial remedies except post-trial motions under Rule 24 and appeal. Any other post-conviction petition seeking relief from a conviction or sentence shall be treated as a proceeding under

this rule."). However, McCuien failed to timely appeal the circuit court's denial of his Rule 32 petition, and if McCuien now "brought his claim[s] as a new Rule 32 petition, it either would be barred by the statute of limitations, *see* Ala. R. Crim. P. 32.2(c), or dismissed as a second or successive petition, *see* Ala. R. Crim. P. 32.2(b)[13,]" both of which are some of "Alabama's firmly established and consistently applied procedural grounds." *Clark*, 988 F.3d at 1329 (quotation omitted). *See also Henderson*, 353 F.3d at 899 (recognizing Alabama Rule 32.2(c)'s limitations period as a "firmly established and consistently applied procedural ground[]" precluding further exhaustion efforts and rendering habeas claims procedurally defaulted); *Hurth v. Mitchem*, 400 F.3d 857, 864 (11th Cir. 2005) ("The sole basis that Hurth has put forward to support his contention that Alabama's Rule 32.2(c) was not firmly established and regularly followed is that, at the time he failed to comply with it, that rule was not jurisdictional in nature. Having rejected Hurth's proposition that the violation of a rule must actually divest the state courts of jurisdiction to decide a claim before the rule will be respected in federal habeas proceedings, we reject his contention that his failure to comply with Rule 32.2(c) did

---

[13] "If a petitioner has previously filed a petition that challenges any judgment, all subsequent petitions by that petitioner challenging any judgment arising out of that same trial or guilty-plea proceeding shall be treated as successive petitions under this rule. The court shall not grant relief on a successive petition on the same or similar grounds on behalf of the same petitioner. A successive petition on different grounds shall be denied unless (1) the petitioner is entitled to relief on the ground that the court was without jurisdiction to render a judgment or to impose sentence or (2) the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice." Ala. R. Crim. P. 32.2(b).

not procedurally bar his ineffective assistance claim. It did."). Because he did not exhaust any claims in either his direct appeal or his Rule 32 proceedings, and because he is now precluded from exhausting them via another Rule 32 petition, McCuien's habeas claims are procedurally defaulted. And "[a] procedurally defaulted claim can support federal habeas relief in only two narrow situations." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008).

> First, the petitioner may demonstrate cause and prejudice. Cause exists if there was "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986). Such external impediments include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel. *Id.*[14] In addition to cause, the petitioner must also show prejudice: that "there is at least a reasonable probability that the

---

[14]

> Ineffective assistance during a stage where the petitioner had a right to counsel is a valid excuse for failing to follow a state procedural rule. *Coleman v. Thompson,* 501 U.S. 722, 753–54, 111 S. Ct. 2546, 2566–67, 115 L. Ed. 2d 640 (1991). On the other hand, at stages where the petitioner had no right to counsel, "it is the petitioner who must bear the burden of a failure to follow state procedural rules." *Id.* at 754, 111 S. Ct. at 2567. Because a petitioner has no right to counsel during state collateral review, even grossly ineffective assistance at the collateral review stage, or no assistance at all, does not constitute cause to excuse a procedural default. *See In re Magwood,* 113 F.3d 1544, 1551 (11th Cir. 1997).

*Mize*, 532 F.3d at 1191. Because McCuien "did not have a right to counsel" on state collateral review, *see Lane v. State*, No. CR-2022-0720, 2024 WL 5182373, at *12 (Ala. Crim. App. Dec. 20, 2024) (explaining that, except in cases involving a sentence of death, "there is no automatic right to counsel during postconviction proceedings" in Alabama), he "is responsible for whatever errors were made in failing to assert the claim there." *Mize*, 532 F.3d at 1192.

result of the proceeding would have been different" had the constitutional violation not occurred. *Henderson v. Campbell,* 353 F.3d 880, 892 (11th Cir. 2003).

Even without cause and prejudice, the procedural default of a constitutional claim may be excused if enforcing the default would result in a fundamental miscarriage of justice. This exception applies if the petitioner can show that, in light of new evidence, it is probable that no reasonable juror would have convicted him. *Schlup v. Delo,* 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995). By making this showing of actual innocence, the petitioner may overcome the procedural default and obtain federal review of the constitutional claim. *Id.*

*Mize*, 532 F.3d at 1190.

### III.    Reply Deadline

Under Rule 5(e) of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he petitioner may file a reply to the respondent's answer or other pleading." McCuien has already submitted a reply (Doc# 11), which addresses the issues discussed above. Nevertheless, Rule 5(e) also states that "the judge must set the time to file unless the time is already set by local rule." As the Court currently has no such local rule and has not previously set a reply deadline for this case, the undersigned hereby sets **MAY 1, 2026**, as the deadline for McCuien to file and serve any additional reply and supporting material to the Respondent's Answer, in particular showing cause why his habeas petition should not be dismissed for the reasons explained above. [15] After that deadline, McCuien's habeas petition will be taken under submission. Except as permitted by S.D. Ala.

---

[15] McCuien's "Motion for Enlargement" dated June 5, 2025 (Doc# 10), which requests additional time to file a reply to the Answer, is **DENIED as unnecessary** since, as mentioned, no reply deadline was ever previously set.

CivLR 7(f)(3),[16] once the petition is under submission, no further submissions related to the issues raised may be filed unless the proponent first obtains leave of court for good cause shown. The undersigned will then review the parties' submissions under Rules 7 and 8 of the Rules Governing Section 2254 Cases to determine whether expansion of the record and/or an evidentiary hearing is warranted. If an evidentiary hearing is not warranted, a recommendation as to the appropriate disposition of McCuien's petition shall issue in due course.

### NOTICE TO *PRO SE* PETITIONER

In light of his *pro se* status, the petitioner is advised that "[a]ll persons proceeding *pro se* shall be bound by, and must comply with, all Local Rules of this Court, as well as the Federal Rules of Civil and Criminal Procedure, unless excused by Court order." S.D. Ala. GenLR 83.5(a). S*ee also Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* … litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure. These rules provide for sanctions for misconduct and for failure to comply with court orders."); *United States v. Hung Thien Ly*, 646 F.3d 1307, 1315 (11th Cir. 2011) ("A *pro se* [party] must follow the rules of procedure and evidence and the district court has no duty to act as his lawyer…" (citation omitted)). For instance, Federal Rule of

---

[16] "If pertinent and significant authority comes to a party's notice after the briefs have been filed, but before decision, a party may promptly advise the Court by notice setting forth the citations and stating the reason the authority was not cited in the party's brief. The notice must specifically refer either to a page of the brief(s) already filed or to a point argued orally. The notice may not exceed two (2) pages and must not present a new argument. No response may be filed unless the presiding Judge so authorizes." S.D. Ala. CivLR 7(f)(3).

Civil Procedure 11(a) requires that any paper filed with the Court be signed by a *pro se* party personally and provide that party's "address, e-mail address, and telephone number."[17] *See also* S.D. Ala. GenLR 5(a)(4) ("For filings by *pro se* litigants, the unrepresented party shall personally sign each document filed and shall include, directly beneath the signature line, his or her name, address and telephone number."). "The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a). *See also* Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). Repeated failures to follow this or any other court rule or order may result in additional sanctions, up to and including dismissal of this action. *See Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005) (explaining that a court may dismiss an action on its own motion as a sanction for failure to obey rules and orders, under both Federal Rule of Civil Procedure 41(b) and the court's inherent authority); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("While dismissal is an extraordinary remedy,

---

[17] The petitioner must <u>handwrite</u> his signature in order to satisfy Rule 11(a). *See Becker v. Montgomery*, 532 U.S. 757, 763–64, 121 S. Ct. 1801, 149 L. Ed. 2d 983 (2001) ("Becker maintains that typing one's name satisfies the signature requirement and that his original notice of appeal, containing his name typed above "(Counsel of Record)," met Civil Rule 11(a)'s instruction…[H]owever, we are not disposed to extend the meaning of the word 'signed,' as that word appears in Civil Rule 11(a), to permit typed names. As Rule 11(a) is now framed, we read the requirement of a signature to indicate, as a signature requirement commonly does, and as it did in John Hancock's day, a name handwritten (or a mark handplaced).").

dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion.").

Under the Court's local rules, "[a]ny person proceeding *pro se* must, at all times during the pendency of the action to which he or she is a party, keep the Clerk informed of his or her current address and … must promptly notify the Clerk of any change of address … Failure to comply with this Rule may result in sanction, including dismissal of a *pro se* plaintiff's action…" S.D. Ala. GenLR 83.5(b). Additionally, any "request for Court action must be presented by motion and may not be presented by informal means such as a letter." S.D. Ala. GenLR 7.

**DONE** and **ORDERED** this the **13th** day of **March 2026**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**